**MICRO CHEMICAL, INC., Plaintiff,**

v.

**LEXTRON, INC., Defendant.**

**CIV. A. No. 88–Z–499.**

United States District Court, D. Colorado.

June 16, 2000.

Richard P. Holme, Davis Graham & Stubbs, LLP, Denver, CO, Donald E. Phillipson, Golden, CO, John Mozola, Mullin Hoard & Brown, LLP, Amarillo, TX, for Plaintiff.

Dennis J. Mondolino, Michael F. Hurley, Hopgood, Calimafde, Kalil & Judlowe, LLP, Cassandra G. Sasso, Denver, CO, for Defendant.

### ORDER

BOLAND, United States Magistrate Judge.

This matter is before me on **Plaintiff's Motion to Compel and Supporting Brief** (the "Motion to Compel") filed June 1, 2000. The defendant has responded, and I heard argument of counsel by telephone. As specified below, the Motion to Compel is GRANTED IN PART and DENIED IN PART.

Although the Motion to Compel addresses a number of issues, all but three were withdrawn. The three remaining issues are: (1) whether William C. Pratt, president of the plaintiff corporation ("Micro Chemical"), may be present at the entry upon land of the facilities of Lextron, Inc. ("Lextron"), for the inspection of the Lextron Type 5 machine; (2) whether during that entry and inspection, Micro Chemical may replace parts on the Lextron Type 5 machine, including a container and hoses, with transparent parts in order to observe and photograph the performance of the machine; and (3) whether Micro Chemical must permit Lextron to inspect its commercial embodiment of the patent in suit.

### 1. Attendance of Mr. Pratt at the Entry Upon Land

■ Micro Chemical asserts that Mr. Pratt is uniquely qualified to assist in its inspection and testing of the Lextron Type 5 machine and that his presence at the inspection is essential to the preparation and presentation of Micro Chemical's case. Lextron concedes that Mr. Pratt has technical expertise in the operation of micro-ingredient feeding machines, but argues that he cannot qualify as an expert or present expert testimony in this case. In addition, Lextron's concern does not involve the disclosure of anything relating to the Lextron Type 5 machine, but instead involves the possibility that Mr. Pratt will observe while at the Lextron research facility other secrets under development, not at issue in this case.

I am convinced that Mr. Pratt has unique skills which will assist in the preparation of Micro Chemical's case and is entitled to be present at the inspection. I also am confident that Lextron can take reasonable precautions, including curtaining off the area of the Lextron Type 5 machine, to assure the protection of Lextron's secrets. Consequently, the Motion to Compel is GRANTED insofar as Micro Chemical seeks to have Mr. Pratt present at the entry upon land at Lextron's facility to inspect and test the Lextron Type 5 machine.

### 2. Modification of the Lextron Type 5 Machine During the Inspection and Testing

■ Micro Chemical also requests leave to alter the Lextron Type 5 machine which it will inspect and test during its entry upon land. Specifically, Micro Chemical seeks to replace a metal container and opaque hoses with other parts which are transparent so that Micro Chemical may observe and photograph the qualities of liquids as they move through the machine. Micro Chemical alleges that this is relevant to the issue of "homogeneous mixing." Lextron opposes the request to alter its Lextron Type 5 machine during the test, arguing that the modifications are major and that the machine to be tested has been sold and is scheduled to be sent to a customer shortly after the inspection.

Micro Chemical owns a Lextron machine, although apparently not a Lextron Type 5 machine. On the machine it owns, Micro Chemical may make any alterations and conduct any tests is wants. In addition, the Lextron Type 5 machine is commercially available. Consequently, Micro Chemical may purchase a Type 5 Machine and conduct on it any tests it wishes. I will not require Lextron, however, in connection with an inspection and test pursuant to Fed.R.Civ.P. 34(a), to allow Micro Chemical to make modifications to and replace parts on a machine owned by Lextron.

Authority to allow one party to inspect and test a piece of machinery owned by another is found at Fed.R.Civ.P. 34(a), which states in relevant part:

Any party may serve on any other party a request ... (2) to permit entry upon designated land or other property in the possession or control of the other party upon whom the request is served for the purpose of inspection and measuring, surveying, photographing, testing, or sampling the property or any designated object or operation thereon, within the scope of Rule 26(b).

The right of a party under Rule 34 to inspect and test, like all discovery, is not unlimited. Rather, as the court stated in *Belcher v. Bassett Furniture Industries, Inc.*, 588 F.2d 904, 908 (4th Cir.1978):

Rule 34, concerning the production of documents and tangible things as well as inspection of premises, is governed by the standards of Rule 26(b) .... Since entry upon a party's premises may entail greater burdens and risks than mere production of documents, a greater inquiry into the necessity for inspection would seem warranted. We therefore reject the plaintiffs' contention that the inspection in this case must necessarily be governed by the general relevancy standard of Rule 26(b). Rule 26(c) expressly provides that "for good cause shown," the court may "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" by either denying inspection or by appropriate restrictions on the inspection. Under this subsection, the degree to which the proposed inspection will aid in the search for truth must be balanced against the burdens and dangers created by the inspection.

And in a footnote supporting that text, the court in *Belcher* explained further:

"[I]t is clear that the right to discovery is a qualified right that does not extend to making unnecessary and unwarranted excursions onto the property of another under the guise of supportable litigative need. Public policy supports reasonable and necessary demands for information in the hands of the adversary, in order that the case may be well and truly tried. But any such invasion of a person's property rights must, in the language of our Supreme Court, 'be judged with care ....

Properly to balance these competing interests is a delicate and difficult task.'"

In the recent more liberalized trend of granting inspection orders, the courts have uniformly scrutinized the problems to insure that the anticipated benefits are real and necessary, and that the burdens will not be intolerable.

*Id.* at 908 n. 12 (internal citations omitted).

The issue here is not whether Micro Chemical may inspect, measure, photograph, or test by operation Lextron's Type 5 machine—they may do so and Fed.R.Civ.P. 34(a) clearly permits it. The issue is whether Micro Chemical may alter Lextron's machine by substituting parts supplied by Micro Chemical in place of standard parts provided in the ordinary manufacture of the machine. I deny that request, taking into consideration the following factors:

(1) Micro Chemical has neither made nor offered any provision for security in the event of damage to the machine or other loss which may be suffered by Lextron if the alteration of the machine were ordered. Lextron argues that the alterations requested by Micro Chemical are substantial. Lextron also argues that the particular Type 5 machine to be tested has been sold, and delivery to Lextron's customer is scheduled to occur shortly after the proposed test. Micro Chemical has offered no evidence, by affidavit or otherwise, that the alterations create no risk of damage or easily can be accomplished;

(2) Micro Chemical already owns a Lextron machine on which it may conduct tests, and the Lextron Type 5 machine is commercially available to be purchased by Micro Chemical. Micro Chemical has offered no explanation for why it cannot conduct the desired tests on its own machine or acquire a machine on which to conduct the tests; and

(3) Although the use of transparent parts may provide a graphic depiction of the operation of the Lextron Type 5 machine, Micro Chemical has not alleged or established that its experts cannot ascertain the information it seeks by observing the operation of the machine as ordinarily equipped.

I am aware of cases in which alterations were permitted during an inspection. *See, e.g., Giorgi v. Union Free School Dist. No. 32,* 152 A.D.2d 621, 543 N.Y.S.2d 723 (App. Div.1989). In that case, and others like it, the issue involved a particular object—the plaintiffs' expert was permitted to drill a small hole in the defendant's premises "to take an accurate measurement of the height of the ramp from which the infant plaintiff fell." *Id.* at 724. *See also* Annotation, "Discovery and inspection of Articles and Premises In Civil Actions Other Than for Personal Injury or Death," 4 A.L.R.3d 762, 786 at § 13 (1965). *But see Crawford v. Moody,* 477 S.W.2d 438, 440 (Mo.App.1972) (rejecting trial court's order requiring that defendants "either remove ... or allow plaintiffs to remove and take possession of" an underground gas pipe involved in an explosion).

This case is materially different. It does not concern the condition of any particular Lextron Type 5 machine, but rather the operation of that class of machine. Tests can be conducted on any Type 5 machine, including one in the possession of Micro Chemical.

In my view, this case more closely resembles *In re Air Crash Disaster at Sioux City, Iowa,* 1991 WL 147365 (N.D.Ill. July 26, 1991). In the *Air Crash* case, plaintiffs sought:

> [T]o use one of United's DC 10–10 flights to re-enact the manipulation of the remaining engines on flight 232. Plaintiffs asked United to provide a non-revenue training or post-maintenance flight for this purpose.
>
> *   *   *   *   *   *
>
> Plaintiffs essentially request that United supply its own flight crew and aircraft to carry out in-flight tests devised by plaintiffs.

*Id.* at *2.

The court refused the request, stating:

> Rule 34 does not require a party to conduct tests on machinery according to the opposing party's specifications .... [N]othing in the Federal Rules of Civil Procedure expressly requires United to make available its own DC 10–10 aircraft

and flight crew so that plaintiffs may re-enact the experience of flight 232.

*Id.* The court also noted the existence of firms that lease, rent, or charter DC–10 aircraft, which were available to the plaintiffs for purposes of obtaining a plane on which to conduct tests.

### 3. Inspection by Lextron of Micro Chemical's Commercial Embodiment

In view of my ruling in Part 1 above, Micro Chemical withdrew its objection, and Lextron's counsel and experts will be permitted to examine Micro Chemical's commercial embodiment of the '971 Patent.

Accordingly, the Motion to Compel is:

(1) GRANTED with respect to Micro Chemical's request that William C. Pratt be present at the entry upon land of Lextron's facilities and for the inspection and testing of the Lextron Type 5 machine. Lextron may take such precautions as may be reasonably appropriate to protect from disclosure its trade secrets or confidential information, including curtaining the area of its facility where the inspection and testing of the Type 5 machine will occur;

(2) DENIED insofar as Micro Chemical seeks to alter the Type 5 machine in connection with its testing; and

(3) DENIED insofar as Micro Chemical objects to the inspection of its commercial embodiment of the '971 Patent by Lextron.

All other issues raised in the Motion to Compel have been withdrawn for now, subject to being renewed later if necessary. Any additional relief sought is therefore DENIED AS MOOT.